# STATE OF MICHIGAN

# COURT OF APPEALS

In re LEE/LEE DANIELS, Minors.

UNPUBLISHED
September 11, 2018

No. 341196
Wayne Circuit Court
Family Division
LC No. 13-512596-NA

Before: SWARTZLE, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her five children: CTL, KLL, ZAML, ZPBL, and ZRLD. The trial court terminated respondent's rights under MCL 712A.19b(3)(b)(*i*) (parent caused sexual abuse of the children), (b)(*ii*) (parent failed to prevent abuse), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that children will be harmed if returned to parent).[1] We affirm.

Respondent first argues that the trial court clearly erred by finding statutory grounds for termination. We disagree. "To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *Id*. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014). We generally defer to the trial court's special ability to judge the credibility of witnesses. *In re Gach*, 315 Mich App 83, 93; 889 NW2d 707 (2016).

The trial court found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*ii*). Termination is appropriate under MCL 712A.19b(3)(b)(*ii*) if "[t]he parent who had an opportunity to prevent the . . . sexual abuse of the child . . . failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home."

---

[1] While the termination order indicates that respondent's parental rights were also terminated under MCL 712A.19b(3)(a)(*i*), this appears to be a clerical mistake intended only to apply to the children's unknown fathers, as that ground concerns the inability to ascertain a parent's identity.

-1-

The Department of Health and Human Services (DHHS), filed a petition to terminate respondent's parental rights after substantiating allegations that ZPBL was sexually abused by respondent's friend, Isaac Seals. At trial, ZPBL testified to the sexual abuse she suffered at the hands of Seals. ZPBL testified that before the incident that triggered the DHHS's involvement, she had told respondent that Seals had touched her inappropriately, and that afterwards respondent continued to allow Seals to watch ZPBL and the other children. Thus, the evidence at trial established that ZPBL's sexual abuse was the result of respondents' failure to prevent the abuse; namely, respondent's choice to continue leaving the children alone with Seals after being alerted to Seals's inappropriate acts.[2] On appeal, respondent argues that we should disregard ZPBL's testimony because it is not credible. As an appellate court, it is difficult for us to judge a witness's credibility, which is why we generally defer to the trial court on this matter. See *In re Gach*, 315 Mich App at 93. The trial court found ZPBL to be credible, and respondent has not presented a sufficient basis for us to question the trial court's credibility determination.

As for the reasonable likelihood that the children would suffer future abuse if placed in respondent's care, the trial court found that respondent failed to take appropriate action when she learned that ZPBL had been sexually abused. Respondent asserts that this finding was erroneous because she attempted to notify the police after learning that Seals had sexually abused ZPBL. While notifying the police was a proper response, respondent only took this action *after* she found out that another adult had taken ZPBL to the hospital and the police station.[3] In addition, the trial court found credible ZPBL's testimony that respondent told her not to tell anyone and attempted to bully ZPBL into lying at the termination trial. Because respondent failed to properly act upon learning of the sexual abuse—and actually tried to cover-up the abuse—it is apparent that respondent does not understand her role in creating the situation that led to ZPBL's sexual abuse. Thus, there is a reasonable likelihood that respondent would care for the children in the same manner as she always has and would continue exposing them to danger. Consequently, the trial court did not clearly err by finding by clear and convincing evidence that there was a reasonable likelihood that the children would suffer future abuse if placed in respondent's care.

Having concluded that termination was proper under MCL 712A19(b)(3)(b)(*ii*), we need not consider the additional grounds upon which the trial court based its decision. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

---

[2] Respondent testified at trial that she never left the children alone with Seals and that ZPBL never told her of Seals's inappropriate behavior, but the trial court credited ZPBL's testimony and not respondent's. Indeed, respondent's testimony was contradicted in part by Garrick Kern, who testified that he used to stay with respondent and the children, and that he once slept outside of Seals's house in his car while the children slept inside Seals's house.

[3] Moreover, respondent's testimony on this point was internally contradictory. During a June 27, 2017 family team meeting, respondent denied that ZPBL was sexually abused, and she continued to express doubt that ZPBL was sexually abused at trial. Thus, according to respondent, she apparently attempted to notify the police to a sexual abuse that she believed never happened.

Respondent next argues that the trial court erred by finding by a preponderance of the evidence that it would be in the best interests of the children to terminate her parental rights. We disagree. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. Appellate courts "review for clear error . . . the court's decision regarding the child's best interests." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83. Again, we defer to the trial court's special ability to judge the credibility of witnesses. *In re Gach*, 315 Mich App at 93.

The best-interests analysis focuses on the child rather than the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). The trial court should weigh all the evidence available to it in determining the child's best interests, *In re Trejo*, 462 Mich at 364, and may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

The trial court found that termination was in the children's best interests because respondent was homeless, had the children stay in abandoned buildings, and otherwise failed to provide adequate living conditions for the children. ZPBL testified that she and her siblings spent most of the time walking from one temporary place of lodging to another. According to ZPBL, when respondent did find housing, it was in the form of hotels or motels, abandoned buildings, or the homes of friends. Other evidence at trial established that respondent had been unable to consistently maintain suitable housing since the children originally fell within the court's jurisdiction in 2013. Thus, the trial court's finding that respondent was homeless and living in abandoned buildings is supported by the record.

Respondent contends that her only barrier to reunification was housing; she apparently fails to realize that her issues extended beyond her failure to maintain suitable housing. ZPBL testified that even when respondent found shelter for ZPBL and her siblings, respondent often left the children alone, leaving ZPBL to care for her younger siblings. Thus, ZPBL—who was 10 years old at the time of trial—was responsible for changing CTL's diapers, bathing her siblings, and washing their clothes. ZPBL also testified that respondent often failed to leave them with sufficient food, and told of one time when she and her four siblings were forced to share one can of Vienna sausages. In addition, the evidence at trial established that respondent failed to consistently enroll her children in school. Even when the children were enrolled, they missed months of school at a time, and neither respondent nor the children could remember the names of the children's teachers. Respondent also lacked employment at the time of the evidentiary hearing. The inadequate conditions that the children were forced to live in while in respondent's care, as well as the unlikelihood that respondent would be able to provide adequate living conditions in the future, support that termination was in the children's best interests.

The trial court also found, and we agree, that termination was in the children's best interests based on respondent's failure to protect ZPBL from sexual abuse. Not only did respondent fail to protect ZPBL, but she failed to take appropriate action upon learning of the abuse. The evidence showed that rather than taking ZPBL to the hospital or law enforcement, respondent instructed ZPBL to not tell anyone. In fact, ZPBL testified that respondent attempted to bully her into lying about Seals's actions. Respondent's failure to prevent the abuse—as well

-3-

as her actions to try to cover-up the abuse—evidence that the children's safety and well-being could not be reasonably assured in respondent's care, which in turn supports that termination was in the children's best interests. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011) (in the context of unknown physical abuse, holding that the trial court did not clearly err by finding that termination was in the children's best interests because their "safety and well-being could not reasonably be assured").

On appeal, respondent contends that she had a strong bond with the children, which supports that termination was not in the children's best interests.[4] While we agree that respondent's bond with her children weighs against termination, this is just one factor that we are to consider. When considering the entire record, we are not left with a definite and firm conviction that the trial court erred by finding by a preponderance of the evidence that termination was in the children's best interests.[5]

Affirmed.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien

---

[4] Respondent also asserts that the trial court did not properly consider the testimony of foster-care worker Aleisha Alston, who, respondent contends, "did not believe that it would be in the best interest to break up the family." Contrary to respondent's assertion, Alston testified that she did not have an opinion whether respondent's parental rights should be terminated.

[5] Relying on *In re Olive/Metts*, 297 Mich App at 43, respondent argues that the trial court was required, and failed, to address the best interests of each child individually. In *In re White*, 303 Mich App 701, 715; 846 NW2d 61 (2014), this Court clarified that "*In re Olive/Metts* stands for the proposition that, if the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." Respondent does not argue that the best interests of the individual children differed significantly, and we can find nothing in the record to otherwise support that conclusion.